KILBY MFG. CO. v. HINCHMAN-RENTON FIRE PROOFING CO.

(Circuit Court of Appeals, Eighth Circuit.  October 31, 1904.)

No. 2,085.

1. BUILDING CONTRACTS—ESTOPPEL FROM ENFORCING PROVISIONS BY SUBSEQUENT ACTS—WAIVER.

Parties to written contracts may, by their subsequent acts, estop themselves from enforcing their provisions, and may waive them.  Plaintiff agreed with Cooke, and Cooke made a contract with the defendant, to construct certain buildings according to plans furnished by the defendant.  These contracts provided that neither the defendant nor Cooke should be liable for any extra work or materials unless they were ordered in writing, and that the compensation for them should be estimated at the rates prescribed in the contracts for similar work.  During the progress of the work the defendant orally requested the plaintiff to furnish 32 items of work and materials which the latter claimed were without the contracts.  The plaintiff furnished them, and charged the defendant their reasonable value.  The defendant admitted the charges for 26 of them to be correct, and paid the charges for 6 of them.  *Held,* each party was estopped by its acts from enforcing the two provisions of the contract cited to defeat the demands of the other, and the plaintiff's action for the reasonable value of the alleged extras was maintainable.

2. CONTRACTS—EVIDENCE—TESTIMONY OF PRIOR NEGOTIATIONS—WHEN ADMISSIBLE.

The contracts above specified required the contractors to pave the approaches to the sheds and to construct walls for them 9 feet high and 400 feet long.  Parol evidence was admitted to the effect that before the contracts were let the defendant informed the plaintiff (1) that the approaches were required to be paved for a distance of 25 feet from the ends of the sheds, and (2) that each of the walls was required to be 7 feet and 6 inches high at one end and about 4 feet and 6 inches at the other, and that the defendant made its bid and contract in reliance upon these statements.

*Held,* the testimony relative to the paving was admissible, but that concerning the walls was not.

3. SAME.

No representation, promise, or agreement made or opinion expressed in the previous conversations of the parties which led up to the written contract is admissible to contradict, modify, or explain its plain terms and their just legal construction.

But where in the application of a written contract to its subject-matter an ambiguity arises which is not resolvable by an examination of the terms of the agreement, parol evidence of the circumstances un-

der which it was made, and of statements of the parties in the negotiations which preceded it, may be received to remove the uncertainty to apply the contract to its subject and to show the actual intention of the parties.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

C. H. Redmond and L. F. Twitchell (Frank C. Goudy, on the brief), for plaintiff in error.

George S. Redd and George Stidger, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge. The Hinchman-Renton Fire Proofing Company, a corporation, brought an action against another corporation, called the Kilby Manufacturing Company, for $5,819.-35, which the plaintiff alleged to be the reasonable value of materials furnished and labor performed for the defendant in the erection of a sugar factory. The defendant answered that this work and these materials were not furnished at its request, but that the materials were furnished and the labor was performed in fulfillment of a contract between the plaintiff and James J. Cooke. There was a judgment for the plaintiff for $6,082 and costs, which the defendant has sued out this writ of error to reverse.

The trial of the action developed these facts: The Kilby Company had undertaken with another corporation to construct for it a sugar factory. Thereupon James J. Cooke made a contract with the Kilby Company to construct this factory for $130,855, in accordance with certain plans and specifications. Before this contract was let, the plaintiff had been requested by the Kilby Company to bid upon certain portions of the work and materials, and had agreed with it to furnish these materials and perform this work for $62,500. The defendant then made the agreement with Cooke whereby the latter agreed to construct the factory, and Cooke made an agreement with the plaintiff whereby the latter agreed to perform the work and furnish the materials assigned to it for the amount of its bid to the Kilby Company. Each of these contracts provided that the contractors should perform the work according to the same plans and specifications. Cooke agreed in his contract with the defendant that the latter might make any alterations, additions, or deductions in the work, that the amount of expense of such alterations should be added to or deducted from the contract price, that it should be estimated at the same rates at which the contract was undertaken, and that he would make no charge for extra work unless the same was ordered in writing by the defendant or by its engineers. The plaintiff, in its contract with Cooke, recited that the defendant had reserved in its contract the right to make alterations, additions, and deductions, and that Cooke should also have the right to make corresponding alterations, additions, or deductions in the work as he thought best; that the amount of the expenses of such alterations should be added to or deducted from the

contract price as the case might be; that it should be estimated at the same rates at which the contract was undertaken; and that no charge should be made by it for extra work unless the same had been ordered in writing by the defendant or by its engineers or by Cooke. Cooke and the plaintiff proceeded to perform their contracts, and the defendant settled with and paid Cooke for his work and materials. In the course of the performance of the plaintiff's contract the defendant verbally requested it to perform labor and furnish materials which it claimed it was not required to perform and furnish under its contract with Cooke. After it had completed its work it presented to the defendant an itemized bill of this work and material, which contained 32 items. The defendant conceded that 26 of them were not covered by the contract, and that it ought to pay them, and paid to the plaintiff $761.03 on account of six of these items. This action was brought to recover for some of the remainder of the items, two of which present the real controversies in the case. A part of the work which the plaintiff agreed to perform consisted of the construction of the walls and approaches of the beet sheds. One of these items was for $1,974.40 for paving the approaches to the beet sheds. The other was for $2,243.15 for increasing the height of the walls of the sheds. The plaintiff was required by its contract to pave the approaches and roadways to the sheds. Before the plaintiff made its bid to the Kilby Company for the work which it subsequently agreed by its contract with Cooke to perform, its president said to the general manager of the Kilby Company: "Mr. Kilby, from these plans and specifications, the way they read, you would have me paving all the north end of that county. Give me some idea of where we stop, what the limit is;" and Mr. Kilby said: "Pave the roadways and 25 feet on each end of the sheds and the width of the roadways." And the plaintiff made its bid and contracted upon that basis. The defendant subsequently requested the plaintiff to extend this paving beyond the 25 feet, and there was evidence in the case that the reasonable value of this extra paving was $1,974.40.

The plans and specifications required the walls of the beet sheds to be 9 feet high and 400 feet long; between the walls of each shed they disclosed a floor; that the bottom of the footings of the walls were to be 3 feet below this floor at its lower end; that the walls were to be constructed upon a horizontal plane, but that the floor was to be laid upon an inclined plane, so that the upper end would be about three feet higher than the lower end. Thus the walls would be nine feet high throughout, but at the lower end of them about six feet of the walls would be above the floor and three feet below the floor, while at the upper end there would be three feet of the walls above the floor and six feet below them. Before the plaintiff made its bid or contract, its president had a copy of these plans and specifications. He said to the general manager of the defendant: "Mr. Kilby, about how will we figure these beet shed walls? Mr. Kilby, how will we figure these; on the grade?" and Mr. Kilby said: "Yes, figure them on the grade. It would be foolishness putting concrete down into the ground to the depth of that, because where it gets to the upper end of the shed the grade raises about eight feet in a thousand, and the upper end of a shed

of 400 feet would raise something over 3 feet out of the hill." Notwithstanding this conversation, the contracts with Cooke required the beet shed walls to be constructed in accordance with the original plans and specifications. When the walls of the sheds were laid out by the engineer of the Kilby Company he required the footings to be only 18 inches below the floor, and when the walls of the first shed were nearing completion it was found that the sheds would not have the capacity required by the contract between the Kilby Company and its employer. Thereupon the defendant required the plaintiff to place upon the top of the walls about the amount of materials which would have been placed in the ground below the actual footings of the walls if the original plans and specifications had been complied with. This change from the original plans and specifications did not require more labor or materials than were required by them. But it did require more than would have been required if the original plans and specifications had provided for the construction of the walls on the grade of the floors in accordance with the conversation between the president of the plaintiff and the general manager of the defendant.

The court charged the jury that the plaintiff might recover the reasonable value of any work done or materials furnished at the request of the defendant that were not included in the contract between the plaintiff and Cooke, and it tried the case upon this theory. This ruling was repeatedly challenged by objections and exceptions to the admission of testimony and by an exception to the charge, and it is now assigned as error on the grounds that by the terms of the contract between the plaintiff and Cooke no recovery for extra work or materials was permissible unless they were ordered in writing, and because the measure of recovery was, by the terms of the agreement, not their reasonable value, but their value estimated at the rates specified for such work and materials in the contract. It is undoubtedly true that either of the parties to this contract might have enforced the provisions upon which the contention of counsel for the defendant is based. Either party might have required all orders for extra work to have been made in writing. Either party might have insisted that the amount of this work and materials should be estimated and compensated according to the rates specified in the contract. But these provisions of the contract did not disqualify either of the parties to it or the Kilby Company from incurring other obligations or from making new contracts. The Kilby Company requested the plaintiff, without writing, to furnish at least 26 items of work and materials which it conceded were not included in the contract between the plaintiff and Cooke; it admitted its liability to pay the reasonable value of them, and it paid this value for 6 of them. The plaintiff .claims that there were 32 such items, and the dispute in this case presents the issue whether or not the additional 6 items were included in the contract between the plaintiff and Cooke or were of the character of the 26 items which both parties conceded to have been without the terms of the contract. The plaintiff furnished the labor and materials for the entire 32 items, and the defendant

accepted this work and materials and paid the reasonable value of some of it, without written orders. These acts of the parties to this action constituted a complete waiver of the express provisions of the contract under consideration. The basis of waiver is estoppel, and each of these parties—the one by directing, accepting, and paying the reasonable value for extra work and materials, and the other by furnishing them without written orders and without estimating their value according to the rates specified in the contract— was estopped from defeating the just claims of the other on account of the provisions of the contract relating to these subjects. There was no error in the course of the trial or in the charge of the court here challenged. St. John's Episcopal Church v. Clarke, 16 Ky. Law Rep. 207, 208; Smith v. Gugerty, 4 Barb. 614, 623; Merchants' Exchange of Dallas v. Butler, 3 Willson, Civ. Cas. Ct. App. 309, 310; Abells v. City of Syracuse, 40 N. Y. Supp. 233, 237, 7 App. Div. 501; Meyer v. Berlandi, 53 Minn. 59, 61, 54 N. W. 937; Wood v. Ft. Wayne, 119 U. S. 312, 320, 7 Sup. Ct. 219, 30 L. Ed. 416.

The court instructed the jury that if they found from the evidence that the conversations between the president of the plaintiff and the general manager of the defendant, which have been recited, were had before the contracts were made, the plaintiff might recover the reasonable value of the work and materials which it furnished for paving the approaches to the sheds and for constructing the walls of the sheds in excess of the amount which it would have been required to furnish by the contracts and specifications as they were modified by these prior conversations. This portion of the charge of the court is assigned as error, and it is insisted that the evidence of prior parol negotiations between the plaintiff and the defendant was incompetent to affect the question whether or not the work and materials claimed for extra paving and for increasing the height of the walls were within the contract between Cooke and the plaintiff. The rules of law by which this assignment must be tried are these: In the absence of fraud, accident, or mistake, all prior parol negotiations are, as a general rule, merged in the written contract of the parties. No representation, promise, or agreement made or opinion expressed in their previous conversations is admissible to contradict, explain, or modify the plain provisions and just interpretation of their written agreement. Wilson v. New United States Cattle-Ranch Co., 20 C. C. A. 245, 249, 73 Fed. 994, 999; Ins. Co. v. McMaster, 30 C. C. A. 532, 540, 87 Fed. 63, 71; Union Selling Co. v. Jones (C. C. A.) 128 Fed. 672, 675; Thompson v. Libby, 34 Minn. 374, 377, 26 N. W. 1. But where, in the application of a contract to its subject-matter, an ambiguity or uncertainty arises which cannot be removed by an examination of the agreement alone, parol evidence of the circumstances under which it was made and of statements made in the negotiations which preceded it may be admitted to resolve the ambiguity, and to prove the real intention of the parties. Stoops v. Smith, 100 Mass. 63, 66, 97 Am. Dec. 76, 1 Am. Rep. 85; Foster v. Woods, 16 Mass. 116, 117; Sargent v. Adams, 3 Gray, 72, 77, 63 Am. Dec. 718; Mumford v. Gething, 7 C. B. (N. S.) 305, 321; First

National Bank v. North, 2 S. D. 480, 486, 51 N. W. 96; Herring v. Boston Iron Co., 1 Gray, 134, 138; Hinnemann v. Rosenback, 39 N. Y. 98, 101–2; Proctor v. Hartigan, 139 Mass. 554, 556, 2 N. E. 99; Thorington v. Smith, 8 Wall. 1, 13, 19 L. Ed. 361; Lonergan v. Buford, 148 U. S. 581, 588, 13 Sup. Ct. 684, 37 L. Ed. 569. The plaintiff sought to recover $1,974.40 for paving the approaches to the sheds. It insisted, and introduced evidence tending to establish its demand, that the reasonable value of the paving laid at the request of the defendant in addition to the paving of the approaches for a distance of 25 feet from the ends of the sheds was $1,974.40. When an endeavor is made to apply the contract between Cooke and the plaintiff to this subject, and to determine what amount of this paving was required by the contract and the original plans and specifications, it is found that they are so indefinite that it is impossible to ascertain. The plaintiff introduced the evidence of its president to the effect that before it made its bid or its contract it called the attention of Mr. Kilby to the fact that the amount of paving upon the approaches to the sheds was not specified, and he informed it that 25 feet from the ends of the sheds would be required, and it made its bid and contract in reliance upon that statement. This evidence did not tend to contradict, modify, or change the contract or the specifications, but merely to make definite and certain that which it was impossible to ascertain otherwise. The plaintiff made its bid and entered into its contract with Cooke to do the paving, which Cooke had agreed to lay for the defendant, in reliance upon this statement of the defendant of the requirement of the agreements. The evidence of the statement of the amount of this paving was competent, and it fixed the limit of the work and materials here required under the contract both because it made definite that which the contract left ambiguous and because after the plaintiff had made its bid and entered into its contract in reliance upon the statement of the amount of paving required, made by the defendant, the latter was estopped from denying the limitation it had thus placed upon the contract. There was no error in the charge of the court in so far as it related to the claim for extra paving.

The facts and the law which condition the claim for the $2,243.15 for extra work and materials bestowed upon the walls of the sheds are of a different character. The plans, specifications, and contracts all required the walls of the beet sheds to be 9 feet in height and 400 feet long. They required their footings to be set 3 feet below the floors of the sheds at their lower ends. There was no ambiguity or uncertainty about the height or length of the walls or the amount of work and materials which would be required to construct them. The plans and specifications portrayed the walls standing upon a horizontal plane and the floors upon an inclined plane rising about eight feet in a thousand feet. Parol evidence was received that before the contracts were let the president of the plaintiff in a conversation with the general manager of the defendant called his attention to the fact that, if these walls were constructed according to the plans, their summits would be but

three feet above the floors at the upper ends of the sheds and about six feet above at the lower ends, and Mr. Kilby told him to put the footings of the walls upon the grades of the floors. The president of the plaintiff testified that the effect of this change was to leave the height of the walls above the floors the same, but to allow the plaintiff to place the footings only 18 inches below the floors, thereby relieving it from constructing portions of the walls about 4 feet and 6 inches in height at the upper ends of the sheds and 1 foot and 6 inches at the lower ends. This testimony was introduced over objection and exception. The defendant insisted that the original plans and specifications controlled, and that, as the walls actually constructed required no more work or materials than those portrayed in the plans and specifications, they were covered by the contract between the plaintiff and Cooke, as well as by that between Cooke and the defendant; but the court charged the jury that: "If Mr. Hinchman went to Mr. Kilby, and Mr. Kilby gave him the depth of the footings and the height of the walls, and upon that he made his bid, and not as shown by the plan, then, under such circumstances, the defendant would be bound to pay for this extra height, and cannot offset against the same any work which might have been contemplated by the original plans and specifications in the building of the wall." The question which the jury was to determine here was whether or not the work and materials required by the original plans and specifications and by the contracts as executed were included in the contracts. The effect of the charge of the court was to instruct them that no part of this work and materials was included within the contracts unless it was within the oral negotiations between the plaintiff and the defendant prior to the agreement. Since the contracts, the plans and the specifications relative to the walls of sheds were neither uncertain nor ambiguous, and the terms of the parol understanding or agreement preceding the written contracts are in direct conflict with them, the plaintiff's claim for increasing the height of the walls falls under the first rule to which we have adverted, and it should have been disallowed. The written contracts of the parties were conclusive evidence of the amount of work and materials required in the construction of the walls of the sheds, and parol evidence of prior negotiations was not competent to contradict or change them. The measure of the plaintiff's recovery here was the reasonable value of the work and materials bestowed upon the walls in excess of those required by the contracts. The evidence conclusively shows that there was no such excess; that while a portion of the labor and materials required by the original specifications to be placed in the ground was placed above the ground, the expense and value of them did not exceed those required by the original specifications. The result is that the court fell into an error in its charge relating to this portion of the plaintiff's cause of action.

There are many other complaints of the trial, and many questions presented for consideration, but a careful examination of them discloses no other error in the trial of the case, and no other

issue of law which demands discussion. The judgment below will accordingly be reversed, and the case remanded for a new trial, unless within 40 days after the filing of this opinion the plaintiff below remits from and satisfies the judgment below to the extent of $2,243.15 and interest thereon at 8 per cent. from November 1, 1902, until February 9, 1904, and files a certified transcript of its remittitur and satisfaction in this court, in which case the judgment below will be affirmed.