WILLIAM F. WAHL v. WATER COMMISSIONERS OF AT-
LANTIC CITY ET AL.

Argued November 8, 1912—Decided February 24, 1913.

A false bill was rendered to the water commissioners of Atlantic City containing items for cost of assistant engineer when none was employed, and the bill was not verified as required by statute. *Held,* on *certiorari* that an approval of the bill by the water commissioners would be set aside.

On *certiorari.*

The prosecutor seeks to set aside the action of the Board of Water Commissioners of Atlantic City in approving and ordering paid a claim of the West Jersey and Seashore Railroad Company for the cost of a concrete bridge under the railroad tracks in connection with a water main of the city. The railroad company gave the city a license to construct and maintain the water pipe. The work was to be done by the railroad company, or its agents, at the expense of the city. The company employed Lockwood to do the work and furnish the material. Lockwood assigned to Cherry ninety-nine hundredths part or interest in the contract, and the work is claimed by the defendants to have been done by the firm of Lockwood & Cherry. The prosecutor insists that this arrangement was a mere sham intended to conceal the fact that

the real contractor was the United Paving Company, of which Louis Kuehnle, one of the water commissioners, was a stockholder and officer. The money required to carry on the work was provided by the United Paving Company; the offices of Lockwood & Cherry were with the paving company, and the employes of the partnership and the corporation were the same. When the work was done an itemized bill for labor and material was rendered to the railroad company, in which an additional twenty per cent. was charged as contractor's profit. This bill was rejected because the railroad company insisted that no more should be charged for contractor's profit than ten per cent. on the labor and five per cent. on the materials. A new bill was then presented in which the items for labor were padded so as to make the total amount, notwithstanding the lower percentage for contractor's profit, the same as the first bill. This bill the railroad rejected, because it could not check the items with its own account. A third bill, similar in character, was then presented and rejected for the same reason. Finally a fourth bill was presented, in which the same total was reached by adding charges of $9.24 a day for one hundred days for assistant engineers, draftsmen and clerical work in main office, and $6.30 a day for use of tools and machinery. This bill satisfied the railroad company's officials, but instead of paying it they first sent it to the water commissioners for approval, and it was approved by two of the commissioners, of whom Kuehnle was one. In fact there was no assistant engineer, but there is evidence that twenty per cent. was a proper charge for contractor's profit to Atlantic City, and that the added charges of $9.24 and $6.30 were reasonable. The claim presented by the railroad company to the water commissioners was not verified by any one on their behalf; it referred to a detailed bill of Lockwood & Cherry submitted therewith, and this bill had affidavits annexed in each of which the affiant swore "that the amounts set forth in the attached bill rendered by Lockwood & Cherry to West Jersey and Seashore Railroad Company are absolutely true and correct as shown by the timebooks and accounts kept and checked by him, with the exception of the items compris-

ing the aggregate amount of five hundred and seventy-four dollars and ninety-two cents ($574.92), which is covered by bill rendered against said Lockwood & Cherry by said West Jersey and Seashore Railroad Company for materials used and labor employed by said company in the construction of said work."

Before Justices SWAYZE, VOORHEES and KALISCH.

For the prosecutor, *F. Morse Archer* (*Grey & Archer* and *Charles S. Moore*, on the brief).

For the defendant the West Jersey and Seashore Railroad Company, *Harry R. Coulomb* (*Bourgeois & Coulomb*, on the brief).

The opinion of the court was delivered by

SWAYZE, J. The bill rendered was a false bill. It does not help the railroad company to prove that twenty per cent. was the usual charge to the city for contractor's profits and that the added charges were reasonable. The law required a true bill, and takes pains to secure that result by requiring an affidavit. By the act of 1902 governing Atlantic City (*Comp. Stat., p.* 1145, *pl.* 1974), expenditures for the water works are to be under the authority and direction of the water commissioners, and disbursements on account of the water department are to be made in payment only of bills duly approved by them. The act of 1871 (*Comp. Stat., p.* 3665, *pl.* 726) makes it unlawful for commissioners of any city to disburse moneys unless the person claiming or receiving them first presents a detailed bill of items with the affidavit of the party claiming payment that the same is correct. The claimant must also specify the dates and names of the persons to whom the amounts composing the bill were paid. We think the water commissioners are within the designation "commissioners" in the act. Since they have control of the finances of the water department and the city comptroller would probably issue a warrant upon their approval of the bill, it is neces-

sary, if the act of 1871 is to have any real effect, that they should withhold their approval until the bill is properly verified. One object of the act of 1871 is to protect the body that audits the bills by giving them the protection of a sworn claim. It has been held to be irregular for a common council to pass a bill, which had been in fact duly sworn to, before the officer had signed the jurat. *Berry* v. *Rahway,* 21 *Vroom* 356. The case is much stronger where there is no affidavit such as the statute requires. In this case there could be no such affidavit at the time of approval by the commissioners since the money had not yet been paid by the claimant—the railroad company. The return to our writ shows indeed affidavits verifying the claim of Lockwood or Lockwood & Cherry against the railroad company, but this does not comply with the statute which requires a verification by the party claiming payment of the city, and no officer or representative of the railroad company attempts to verify their bill. This is no idle form, for an examination of the affidavits annexed to Lockwood & Cherry's bill against the railroad shows that at most they purport to verify only the charges that correspond with the timebooks and accounts kept by the cashiers on the works. Literally read, the affidavits except from the verification altogether the sum of $574.92. It is probable that the affiants meant to say that this sum is to be excepted from the amount shown on the timebooks and accounts of the cashier. Assuming this in favor of the defendants, the affidavits still fall short of verifying the amount; to say, as they do, that it "is covered by bill rendered against said Lockwood & Cherry by said West Jersey and Seashore Railroad Company for materials used and labor employed by said company in the construction of said work," is no verification. The city was entitled to have some one having knowledge, make affidavit on the part of the railroad company that the "bill rendered" to Lockwood & Cherry was correct. The railroad company is therefore in the position of having rendered a false bill in which items were inserted for the purpose of increasing the bill to a certain amount after other bills for the same amount had been rejected because the items could

not be checked; of refusing or neglecting to comply with the statute requiring verification, and of securing an approval of its bill before it had paid out its own money. We think an approval had under such circumstances cannot be sustained as an exercise of lawful power by the water commissioners, and must be set aside, with costs.