[No. 3772.   Decided September 4, 1902.]

THE STATE OF WASHINGTON, on the Relation of Victor Boom Company, Respondent, v. FRANK E. PETERSON, Appellant.

CONTEMPT—SHOWING BY AFFIDAVIT—FORM OF AFFIDAVIT.

The statutory requirement that matters constituting contempt must be shown by affidavit presented to the court is satisfied by the filing of a written declaration in the form of a complaint, properly sworn to and certified, when such declaration is intended to constitute an affidavit.

SAME—DISOBEDIENCE OF ORDER OF COURT—PERSONS AFFECTED BY ORDER.

Bal. Code, § 5798, subd. 5, which provides that disobedience of any lawful judgment, decree, order, or process of a court shall be deemed a contempt of court, applies only to such as stand in the relation of parties to the action, or in privity with, or in the position of servant, agent, or employee of, the nominal parties, and who are in some way designated as subject to the orders of the court.

SAME—SUMMARY PROCEEDINGS ON ATTACHMENT FOR CONTEMPT—HARMLESS ERROR.

The fact that one attached for contempt was ordered arrested and brought before the court without bail and without the designation of a return day in the warrant, was not prejudicial error where the record shows that, when brought into court, he was allowed time to plead, and, in the meantime, to go upon his own recognizance.

Appeal from Superior Court, Chehalis County.—Hon. CHARLES W. HODGDON, Judge. Reversed.

*John C. Hogan,* for appellant.

*J. C. Cross,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—This is a proceeding for the punishment of the appellant, Frank E. Peterson, for an alleged contempt in violating a restraining order issued by the superior court of Chehalis county, in an action which was then pending in said court.

It appears from the record that the Victor Boom Company, a corporation, organized and existing under the laws of this state, on January 13, 1900, instituted an action in said court, against Stephen Goodwell and H. G. Ellis, to restrain them from molesting or interfering with the property and appliances of said plaintiff.

The Victor Boom Company was organized in the year 1899, and seems to have complied with all the requirements of our statutes in relation to such corporations. On January 31, 1900, the court, in said action, on motion of plaintiff, ordered and adjudged as follows: "That until the further order of the court in the premises, you, the said Stephen Goodwell and H. G. Ellis, and each of you, defendants herein, and all and singular of your agents and employees, and all others acting for you, and each or either of you, do absolutely desist and refrain from molesting, or interfering with, in any manner or form, whatsoever, the property, or any part thereof, of the said plaintiff situate and being at and near the mouth of the Neushkah river, and the waters of Gray's Harbor, contiguous thereto in said Chehalis county, mentioned and referred to in the plaintiff's complaint as constituting

the boom of the said plaintiff, the same being composed
of piling, boom sticks and chains and appliances used in
catching, sorting, booming, and rafting of saw logs, at
the place aforesaid, and therein fail not at your peril.
This order and judgment to take effect and be in force
from and after entry, the filing of a bond, as hereinbe-
fore provided, and the service of the same on the said de-
fendants."

This order was served upon the defendants in the ac-
tion, and also upon Peterson, the appellant herein. There-
after there was filed with the clerk of the court aforesaid
what was termed a "complaint and affidavit," entitled,
"The State of Washington, at the relation of The Victor
Boom Company, a corporation, plaintiff, vs. Frank E.
Peterson, defendant," in which is set forth all the rec-
ords and proceedings in the original suit of the relator
against Goodwell and Ellis up to and including the re-
straining order above quoted, and in which it is alleged,
in substance, that the said Frank E. Peterson, in dis-
regard of the said order of the court, and in violation
thereof, did, on February 2, 1900, wilfully, maliciously,
wrongfully, and without reason or excuse therefor, cut
loose and set adrift certain boom sticks and chains of the
relator from its boom at the mouth of the Neushkah river
and the waters of Gray's Harbor, at and near the mouth
of said river, and within the plat of the relator as men-
tioned and set forth in the original complaint; and the
said Frank E. Peterson did then and there, in violation
of said order, interfere with and molest the property of
the said relator while the said relator was conducting its
ordinary business of booming and rafting saw logs, at its
boom aforesaid, by then and there cutting loose from its
boom about sixteen boom sticks and chains, and setting
the same adrift in the waters of Gray's Harbor; the said

Peterson then and there declaring that he would clear the boom of any and all sticks and chains that might be placed in said boom by the relator, and that he would disregard the said order of the court. The complainant prayed for the issuance of a citation to the said Peterson for his appearance before the court. This complaint and affidavit was sworn to by G. M. Powell, secretary and treasurer of relator, before the clerk of said superior court, and upon presentation thereof the court, on February 6, 1900, issued a warrant of arrest against the defendant, Peterson, returnable forthwith, requiring the said defendant to answer the allegations of contempt in said affidavit contained, and that the defendant be held, when arrested under such writ, without bail. The court, at the same time, ordered that a copy of the affidavit then on file in the cause be served upon the defendant with the writ of attachment. The defendant was accordingly arrested and brought into court and thereupon, by his counsel, moved to quash the warrant and dismiss the proceeding upon the grounds: First, that no affidavit, as required by statute, as a basis for the proceeding, was ever made or filed; second, that the warrant was null and void in failing to specify a return day; and, third, that the order directing the issuance of the warrant was void in denying the defendant the right to be admitted to bail. This motion was heard and denied on the 6th day of February, and the defendant was required to plead to the complaint and affidavit on February 10, 1900, at the hour of 10:00 o'clock, a. m., bail being fixed at $200, to be given by himself for his appearance at said date. On the day last mentioned, the defendant appeared and demurred to the complaint made the basis of the proceeding upon the grounds, among others, that no affidavit as required by law was ever made or filed as a basis for the

issuance of the warrant for the arrest of the defendant; that the complaint did not state facts sufficient to constitute a cause of action against the defendant or grounds for the punishment of the defendant for contempt of court, and that the court had not acquired jurisdiction in the premises. The demurrer was overruled, and, the defendant having answered, the case proceeded to trial before the court. The defendant was found guilty, and was adjudged to pay a fine and costs, and to stand committed until such fine should be paid. From this judgment the defendant has appealed.

It is alleged by the appellant that the court erred: (1) In denying his motion to quash the proceedings and discharge the defendant on the ground that no affidavit as required by statute was made or filed as a basis for the proceeding, and that the court was without jurisdiction in the proceeding; (2) in ordering the arrest of the defendant without bail, and in denying the appellant's motion to quash the warrant on that ground; (3) in making the warrant of arrest returnable forthwith, and not upon a day certain, and denying the motion to quash the warrant for that reason; (4) in overruling the appellant's demurrer to the complaint on the ground that it did not state facts sufficient to constitute a contempt; and (5) in denying appellant's motion for a nonsuit.

It is claimed by counsel for the appellant that no affidavit whatever was filed by or on behalf of the relator as a basis for this proceeding. This contention is predicated upon the assumption that the paper writing which the learned trial court treated as an affidavit was merely an ordinary complaint, and, though sworn to, was neither in form or substance an affidavit. It was in the form of a complaint in an ordinary civil action, and was subscribed by the attorney for the relator as complaints ordinarily

are in our practice; but it does not necessarily follow from those facts that it might not have been properly treated as an affidavit. It has been said that an affidavit is a declaration on oath, in writing, sworn to by the affiant before some person who has authority to administer oaths. *Harris v. Lester,* 80 Ill. 307; 2 Cyc. p. 4. An affidavit is not a pleading, and cannot be made to take the place of a pleading required by law. For instance, an affidavit cannot be made to serve the purpose of a plea in abatement or in bar. *Kellogg v. Sutherland,* 38 Ind. 154. On the other hand, it is the general rule that a verified pleading cannot be substituted for an affidavit that the law specially requires. *Gawtry v. Doane,* 51 N. Y. 84. But we think that a written declaration, properly sworn to and certified, may constitute an affidavit, if intended as such, even though it be in the form of an ordinary pleading. The venue is properly prefixed to this alleged affidavit, and the facts therein stated seem to have been sworn to before the proper officer, and it would, therefore, seem that the contention that *no affidavit* was filed is not available.

But it is further contended by the learned counsel for the appellant that even if it be conceded that the instrument designated by the relator as a complaint and affidavit may be regarded as an affidavit in contemplation of the statute, it nevertheless fails to state facts sufficient to constitute a contempt of court, and, if that be true it necessarily follows that the appellant's demurrer thereto should have been sustained. Our statute provides that, before any proceedings can be taken in cases of contempt, other than those committed in the immediate view and presence of the court, the facts constituting the contempt must be shown by affidavit presented to the court, and thereupon such court may either make an order upon the

person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance. Ballinger's Code, § 5801; Hill's Code, § 781. The statute also provides that disobedience of any lawful judgment, decree, order, or process of the court is deemed to be a contempt of court. Ballinger's Code, § 5798, subd. 5.

The restraining order in the case at bar enjoined, as we have seen, the defendants Stephen Goodwell and H. G. Ellis, their agents and employees, from doing certain things therein specified; and, before the appellant could be lawfully punished for its disobedience, it was necessary to allege and prove that he was either a party to the action in which the order was made, or, at least, that he was an agent or employee of the defendants named. It is not, and could not be, claimed that the appellant was a party to the suit in which the order was passed which the appellant is accused of violating; and it is the general rule that only parties to the action are liable to be proceeded against for an alleged disobedience of an injunction or restraining order issued therein. *Watson v. Fuller*, 9 How. Pr. 425; Rapalje, Contempts, § 47; 4 Enc. Pl. & Pr. p. 778, and cases cited. That a person not a party to a suit is not bound by an injunction granted therein was decided by this court in *Savage v. Sternberg*, 19 Wash. 679 (54 Pac. 611, 67 Am. St. Rep. 751). But it has been held that a person not a nominal party to the action in which the injunction was granted may, in certain cases, stand in such a relation to the party or parties that he may be bound by the orders issued therein after notice thereof has been given to him. Thus, one who is in privity with, or who occupies the position of servant, agent, or employee of, a party who is enjoined, will, if named, or in some way designated in the order of injunction, be sub-

37—29 Wash.

ject to punishment for willfully disobeying such order. *Boyd v State,* 19 Neb. 128 (26 N. W. 925.)

In the case last cited, the Omaha Horse Railroad ran along and through St. Mary's avenue and across Seventeenth street in the city of Omaha. The city of Omaha was engaged in constructing a sewer along Seventeenth street and across St. Mary's avenue. This work was being done by contract, McHugh, McGavock & Co. being the contractors with the board of public works of said city for the construction of said sewer. At the suit of the owner of the railroad the contractors, their agents, servants, laborers, and employees were temporarily enjoined and restrained from tearing up the street car track and a bridge thereon on St. Mary's avenue at its intersection with Seventeenth street in said city. At the time of these transactions one James E. Boyd was the mayor of the city of Omaha, and as such he gave such direction to the chairman of the board of public works of the city as led to the doing, by other servants of the city, of the things which the contractors and their servants were enjoined from doing. An attachment for contempt was thereupon issued against him for a disobedience of the order of the court granting the provisional injunction, and he was found guilty of contempt, and a fine of two hundred dollars was imposed upon him. An appeal was taken to the supreme court, and that court reversed the judgment of the district court, and dismissed the proceeding; the court holding that an injunction is personal to the party against whom it is directed, and persons occupying a subordinate relation to such party, and that Boyd occupied no such relation to the contractors who had been enjoined, or either of them. In the course of the opinion in that case it is said:

"Neither the judgment or order of injunction partake of the nature or character of a proclamation. Indeed, it may be said, ordinarily, courts have to do officially only with parties to suits and legal proceedings before them, while the executive and legislative departments have official relations with the body of the people."

The court below was evidently of the opinion that the appellant, Peterson, although not a party to the injunction, occupied such a relation to Goodwell and Ellis that he was bound by the order of the court, and liable to punishment for violating its provisions. But even under that view of the law the judgment appealed from cannot be sustained. We have not been able to discover any allegation in the affidavit or complaint presented to the superior court on behalf of the relator herein that the appellant was either a servant, agent, or employee of the defendants in the original action; and without such an allegation the affidavit was not sufficient to authorize the court to proceed against the appellant for the alleged contempt. The supreme court of Oregon, under a statute similar to ours, expressly held that the court has no authority to proceed against a party for contempt on account of acts not committed in its immediate presence, unless the facts constituting the contempt are shown by an affidavit presented to the court. *State v. Kaiser,* 20 Ore. 50 (23 Pac. 964, 8 L. R. A. 584). And in *State ex rel. Olson v. Allen,* 14 Wash. 684 (45 Pac. 644), it is held that the fact that proof introduced upon the trial tends to show that one charged with contempt of court has violated the court's order is immaterial when such fact is not sufficiently shown by the affidavit used as the basis of the proceedings. Furthermore, this court in a recent case said:

"While the power to punish for contempt is inherent in all courts, as such power is essential to the preserva-

tion of order, the due enforcement of the judgments, orders, and processes of the court, and, consequently, to the due administration of justice, it is, nevertheless, in its nature, arbitrary, capable of abuse, and, when exercised, affects either the property or the personal liberty of the individual against whom it is directed. And while the legislature may not lawfully take away this power altogether, it can, undoubtedly, to prevent its abuse, and to preserve the just rights of the individual, reasonably limit its exercise; that is to say, it can declare what acts or omissions shall constitute contempt, define the character, and limit the amount of punishment that may be inflicted for their breach, and prescribe the method of procedure by which the recusant party shall be brought before the court, and the procedure to be followed upon his trial. . . . When, therefore, the lower court proceeded to punish the petitioner without following the prescribed procedure, it proceeded illegally, and without authority of law. . . . More than this, the statute is imperative. It has made an affidavit essential to set the powers of the court in motion, and, although the rights of the parties may be as well protected in a procedure had upon the return of the officer as in a procedure had upon an affidavit, yet the courts may not alter the statute." *In re Coulter,* 25 Wash. 526 (65 Pac. 759).

Indeed, it seems to us extremely doubtful that the appellant was guilty of contempt upon the state of facts disclosed by the evidence adduced at the trial. It appears from the proofs that the West Aberdeen Boom Company was the owner and in possession of a boom in the Neushkah river and was engaged in catching, sorting, and rafting saw logs therein, and that while so doing the Victor Boom Company, by its officers or agents, entered upon the premises claimed by the West Aberdeen Boom Company, and placed boom sticks thereon, notwithstanding the objections and protests of the latter company, in such a manner as to interfere with its ordinary operations. The ap-

pellant, as the employee of the West Aberdeen company, and, as he claimed, by its direction, removed the boom sticks and appliances placed within its boom, and that act constitutes the alleged contempt of court. It would seem that neither the restraining order or the filing of the relator company's plat authorized that company either to take possession of or to use or interefere with the property of another company or person. See, Rapalje on Contempts, § 44. But we need not, and do not, determine this question, for, as we have shown, the affidavit was not sufficient "to set the powers of the court in motion."

It is further contended that the court erred in ordering the appellant to be arrested and brought before it without bail, and without designating a return day in the warrant. But we see no substantial merit in this point, for the record shows that the appellant, being in court, was allowed time to plead, and, in the mean time, to go upon his own recognizance.

For the foregoing reasons, the judgment is reversed, and the proceeding dismissed.

REAVIS, C. J., and DUNBAR, and MOUNT, JJ., concur.