545 S.E.2d 515

Lamar W. DAWKINS and George W. Chisholm, Appellants,

v.

Richard E. FIELDS; Louis O. Dore; Margaret W. Lesesne, Personal Representative of the Estate of Theodore Lesesne; Mildred Bobo, Personal Representative of the Estate of William Bobo; Herbert A. DeCosta, Jr.; Juanita J. Washington; Richard N. Whitney; R.M. Stiney, Jr.; James Vickers; Agatha Cooper; Harold Lesesne; DIA–Dick Realty Company; and Seaside Development Corporation, Respondents.

No. 3310.

Court of Appeals of South Carolina.

Heard Dec. 11, 2000.

Decided Feb. 26, 2001.

Rehearing Denied May 21, 2001.

Wilmot B. Irvin, of Law Offices of Wilmot B. Irvin, and Blaney A. Coskrey, III, of Law Offices of Blaney A. Coskrey, III, both of Columbia, for appellants.

Steven P. Groves, Sr., Carol B. Ervin and Stephen L. Brown, all of Young, Clement, Rivers & Tisdale, of Charleston, for respondents.

GOOLSBY, Judge:

Lamar W. Dawkins and George W. Chisholm, shareholders of Seaside Development Corporation (Seaside), filed this action against the corporation's directors and officers and a shareholder corporation, alleging common law breach of fiduciary duty, violation of statutory standards for directors, corporate oppression, and violation of preemptive rights. The trial court granted the defendants' motion for summary judgment. Dawkins and Chisholm appeal, arguing the trial court erred in excluding their expert's affidavit, in refusing to treat their verified complaint as an affidavit, in resolving issues of fact, and in granting summary judgment before discovery could be completed. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

All of the parties are shareholders of Seaside. The defendants were, at all times relevant to the plaintiffs' allegations, directors of Seaside, with the exception of Seaside itself and DIA–Dick Realty Co., a company owned and controlled by

Richard E. Fields. Additionally, three of the defendants were officers of the corporation.

Seaside was established in 1959 for the purpose of acquiring and holding real estate on Hilton Head Island. The company purchased a large tract of land on the island. On January 23, 1996, after months of negotiations, Seaside entered into an agreement to sell the property to the Town of Hilton Head for $1,200,000.

The plaintiffs filed this action, individually and on behalf of Seaside, on July 28, 1998. In their verified complaint, the plaintiffs allege the defendants, knowing that the property was going to be sold, sold themselves additional shares of Seaside stock in a scheme to increase their proportional ownership of the corporation. They claim that for $100 per share the defendants sold themselves 180 shares on August 1, 1995, 205 shares on January 17, 1996, and 330 shares on July 16, 1996.[1] The plaintiffs assert that the defendants lacked an adequate business purpose for issuing the shares in question and that better alternatives for raising capital existed. Furthermore, the plaintiffs claim the defendants issued the shares without adequate disclosure to the remaining shareholders "and in a manner that prevented other shareholders from understanding the transaction and its ramifications on those in control and [on] minority shareholders." Finally, the plaintiffs aver that on September 21, 1996, and October 24, 1997, the defendants declared two 100–percent dividends on Seaside's outstanding shares. The plaintiffs contend the defendants' actions violated both common law and statutory duties imposed upon them as directors and officers.

On August 26, 1998, the plaintiffs filed their first discovery requests. On September 14, 1998, the defendants filed an answer denying any wrongdoing. The defendants also counterclaimed against the plaintiffs for alleged wrongdoings.

On October 20, 1998, the defendants filed a motion for summary judgment. They attached an "exhibit book" with their motion that contained documents supporting their motion. On October 23, 1998, the plaintiffs filed a motion to compel discovery because the defendants had not answered the August 26 discovery requests.

---

1. Some of the defendants allegedly bought stock on one of these dates while others bought stock on more than one of these dates.

On November 6, the plaintiffs moved for a continuance of the summary judgment hearing on the grounds that they had not had an opportunity to conduct discovery and that the defendants had been uncooperative in discovery requests to date. Alternatively, the plaintiffs asked the trial court to deny the summary judgment motion because it was premature.

On November 16, 1998, the trial court held a hearing on the defendants' motion for summary judgment and the plaintiffs' motion for a continuance. In opposition to the defendants' motion for summary judgment, the plaintiffs submitted their verified complaint and the affidavit of Professor John Freeman, an expert on corporations and securities. Just prior to the hearing, the defendants answered the August discovery requests.

By order dated April 1, 1999, the court denied the plaintiffs' motion for a continuance and granted the defendants' motion for summary judgment. The court refused to consider the plaintiffs' expert affidavit, concluding the affidavit contained legal opinions and conclusions rather than specific facts as required by Rule 56(e) of the South Carolina Rules of Civil Procedure. Additionally, the court questioned whether the expert had reviewed the entire record.

The plaintiffs moved to alter or amend the order granting summary judgment, arguing, among other things, that the court erred in (1) excluding the affidavit and (2) failing to consider their verified complaint as an affidavit for purposes of the summary judgment motion. In an order denying the plaintiffs' motion, the court concluded that the plaintiffs' attempt to use the verified complaint as an affidavit "does not comport with South Carolina law" and that even if it did, the allegations were too conclusory to constitute admissible evidence. As to the expert affidavit, the court reiterated its earlier conclusion that the affidavit constituted an opinion on the law rather than a presentation of facts. This appeal followed.

## LAW/ANALYSIS

### Standard of Review

Summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to

judgment as a matter of law.[2]  "Summary judgment should not be granted even when there is no dispute as to the evidentiary facts if there is dispute as to the conclusions to be drawn from those facts."[3]  "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party."[4] Summary judgment should be invoked cautiously to avoid improperly denying a party a trial on the disputed factual issues.[5]

### The Verified Complaint

■ The plaintiffs argue that the trial court erred in refusing to accept their verified complaint as an affidavit for purposes of summary judgment.  We agree.

The trial court held that the plaintiff's attempted use of their verified complaint as an affidavit did "not comport with South Carolina law."  The trial court, however, cited no authority for this conclusion and failed to identify in what way the practice would not comport with South Carolina law.

Although our courts have not specifically addressed whether a verified complaint is the equivalent of an affidavit for purposes of summary judgment, Rule 56 of the South Carolina Rules of Civil Procedure is identical to its federal counterpart. In the absence of state law on the issue in question, federal cases interpreting the rule are persuasive.[6]

---

**2.** Rule 56(c), SCRCP; *Quality Towing, Inc. v. City of Myrtle Beach*, 340 S.C. 29, 530 S.E.2d 369 (2000).

**3.** *Piedmont Engineers, Architects & Planners, Inc. v. First Hartford Realty Corp.*, 278 S.C. 195, 196, 293 S.E.2d 706, 707 (1982).

**4.** *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 85–86, 502 S.E.2d 78, 81 (1998).

**5.** *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991).

**6.** *See State v. Colf*, 332 S.C. 313, 504 S.E.2d 360 (Ct.App.1998) (noting that federal interpretation of the rules of civil procedure is persuasive when there is no South Carolina interpretation).

■ Federal courts addressing the issue have held that for the purposes of summary judgment, a verified complaint is the equivalent of an affidavit, provided that the verified complaint meets the requirements of Rule 56(e).[7] Likewise, numerous state courts have held that a verified complaint is the equivalent of an affidavit for summary judgment purposes.[8] More-

7. *See Huckabay v. Moore*, 142 F.3d 233 (5th Cir.1998); *Ford v. Wilson*, 90 F.3d 245 (7th Cir.1996); *Colon v. Coughlin*, 58 F.3d 865 (2d Cir.1995); *Neal v. Kelly*, 963 F.2d 453 (C.A.D.C.1992); *Williams v. Griffin*, 952 F.2d 820 (4th Cir.1991); *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir.1991); *Williams v. Adams*, 935 F.2d 960 (8th Cir.1991); *Sheinkopf v. Stone*, 927 F.2d 1259 (1st Cir. 1991); *Conaway v. Smith*, 853 F.2d 789 (10th Cir.1988); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985); *Lew v. Kona Hosp.*, 754 F.2d 1420 (9th Cir.1985).

8. *See Smith v. Thompson*, 923 P.2d 101 (Alaska 1996) (noting that verified and notarized documents satisfy the same basic requirements); *Kiser v. A.J. Bayless Mkts.*, 9 Ariz.App. 103, 449 P.2d 637 (1969) (recognizing that a verified complaint may be adequate to controvert the affidavits of the moving party); *Moore v. Goldome Credit Corp.*, 187 Ga.App. 594, 370 S.E.2d 843 (1988) (holding a properly verified pleading containing specific factual allegations must be considered in opposition to affidavits filed in support of a motion for summary judgment); *Camp v. Jiminez*, 107 Idaho 878, 693 P.2d 1080, 1083 (Ct.App.1984) ("[A] verified complaint may be presented to the court . . . and it will be accorded the probative force of an affidavit if it meets the requirements of Rule 56(e)."); *Hladczuk v. Epstein*, 98 A.D.2d 990, 470 N.Y.S.2d 211 (1983) (stating that a verified pleading is the equivalent of an affidavit for purposes of summary judgment); *Page v. Sloan*, 281 N.C. 697, 190 S.E.2d 189 (1972) (holding verified complaint may be treated as an affidavit if it complies with Rule 56(e)); *Peace–U.S.A. v. Abbott*, 1990 WL 75405, *2 (Ohio Ct.App.1990) ("Since the complaint was verified . . . it is not merely a pleading to be disregarded for summary judgment purposes, but it is an affidavit in its own right suitable for admission. . . ."); *Pentecost v. Harward*, 699 P.2d 696 (Utah 1985) (holding that a verified pleading that meets the requirements of Rule 56(e) can be considered the equivalent of an affidavit); *cf. Willis v. Lauridson*, 161 Cal. 106, 118 P. 530 (1911) (holding that when seeking an injunction, a verified pleading is equivalent to an affidavit); *Golden Canal Co. v. Bright*, 8 Colo. 144, 6 P. 142 (1884) (holding that under mandamus statute, a verified petition was equivalent to an affidavit); *Iowa v. One Certain Automobile*, 237 Iowa 1024, 23 N.W.2d 847 (Iowa 1946) (noting the general rule that a verified pleading may be held to be an affidavit); *Missouri ex rel. Burton v. City of Parsons*, 77 Kan. 774, 95 P. 391 (1908) (noting that a verified petition can be used as an affidavit and the allegations contained therein should be treated accordingly); *Montana ex rel. Redle v. District Court In and For Missoula County*, 102 Mont. 541, 59 P.2d 58 (Mont.1936) (noting that under statutes requiring an

over, our review of South Carolina cases leads us to believe that such a result is consistent with South Carolina law.[9] Accordingly, we hold that for summary judgment purposes, a verified pleading is equivalent to an affidavit, provided it meets the requirements of Rule 56(e).

Under Rule 56(e), an affidavit or verified complaint must meet three criteria to be considered by the court: (1) it must be made upon personal knowledge; (2) it must set forth facts admissible in evidence; (3) it must show that the affiant is competent to testify to the matters stated therein.

The verification in the present case states:

PERSONALLY APPEARED before me, Lamar W. Dawkins, who being duly sworn, deposes and says: that he is one of the Plaintiffs, in the foregoing action, that he has read the within Complaint, and that the facts are true of his own knowledge, except those matters and things therein alleged upon information and belief, and as to those, he believes them to be true.

affidavit, a verified petition is equivalent to, and can be used as, an affidavit); *Rekart v. Safeway Stores*, 81 N.M. 491, 468 P.2d 892, 895 (Ct.App.1970) ("The verification of the complaint is a statement that the contents of the complaint are true; thus, in effect, an affidavit."); *Renville State Bank v. Kinsberg*, 40 S.D. 191, 166 N.W. 643, 644 (1918) ("A written declaration, properly sworn to, may constitute an affidavit, even though in the form of an ordinary pleading."); *Washington ex rel. Victor Boom Co. v. Peterson*, 29 Wash. 571, 70 P. 71 (1902) (holding that a verified pleading can constitute an affidavit).

9. *See Conran v. Yager*, 263 S.C. 417, 211 S.E.2d 228 (1975) (wherein supreme court held that the failure of movant to attach affidavits or verified pleadings in support of motion for summary judgment did not preclude granting of the motion); *Jordan v. Tadlock*, 223 S.C. 326, 75 S.E.2d 691 (1953) (holding that under the statute requiring verification of an account by affidavit, a verified complaint substantially complied with the statute); *Biltrite Bldg. Co. v. Adams*, 193 S.C. 142, 7 S.E.2d 857 (1940) (noting that under the attachment statute requiring an affidavit, a verified complaint will substitute);*Ferst v. Powers*, 58 S.C. 398, 410, 36 S.E. 744, 749 (1900) ("There can be no doubt that the complaint, which is verified, and may therefore be used as an affidavit in an application for an attachment...."); *Bowers v. Bowers*, 304 S.C. 65, 403 S.E.2d 127 (Ct.App.1991) (allegations in an unverified counterclaim were not evidence); *Arnold v. Arnold*, 285 S.C. 296, 328 S.E.2d 924 (Ct.App.1985) (wherein the court of appeals accepted verified pleadings as evidence).

Here, the requirements of Rule 56(e) are met. First, the verification states that the facts are made upon personal knowledge. Second, in reading the complaint, while some averments are conclusory and should not be considered facts admissible in evidence, other statements are factual and would be admissible. Finally, the verification identifies Dawkins as a plaintiff in the action; therefore, he is competent to testify.[10]

## The Expert's Affidavit

■ The plaintiffs next argue the trial court erred in refusing to consider Professor Freeman's affidavit. We agree.

We first note that, contrary to the defendants' contention, Professor Freeman's affidavit is based on his personal knowledge. In his affidavit, Professor Freeman states that, in evaluating and forming opinions about the case, he reviewed the pleadings, the summary judgment motion itself, and the documents that the defendants submitted in support of their motion.

■ Additionally, Professor Freeman's affidavit contains numerous fact-based opinions that constitute admissible evidence. Our rules of evidence specifically permit the admission of an expert's opinion when it will assist the fact finder in understanding the evidence or determining a fact in issue.[11] Moreover, an expert's otherwise admissible opinion is not inadmissible simply because it embraces the ultimate issue to be decided by the trier of fact [12] or simply because it expresses opinions and inferences.[13]

---

10. *See McElveen v. Atlantic C.L.R. Co.,* 210 S.C. 556, 43 S.E.2d 485 (1947) (noting that a party was competent to testify as to the condition of livestock at the time he inspected them).

11. Rule 702, SCRE.

12. Rule 704, SCRE; *Knoke v. South Carolina Dep't of Parks, Rec. & Tourism,* 324 S.C. 136, 478 S.E.2d 256 (1996).

13. *See Barrett v. Danbury Hosp.,* 232 Conn. 242, 654 A.2d 748 (1995) (expert's opinion is "a fact" that would be admissible at trial for purpose of a motion for summary judgment); *Independent Fire Ins. Co. v. Sunbeam Corp.,* 755 So.2d 226 (La.2000) (holding affidavits of expert witnesses are not inadmissible for summary judgment purposes simply because they contain opinions); *Copper }& Brass Sales, Inc. v. Plating Resources,* 1992 WL 368497, *5 (Ohio Ct.App.1992) (holding trial court

## Genuine Issue of Material Fact

█ We now address whether there is a genuine issue of material fact. Viewing the evidence in the light most favorable to the plaintiffs, the record shows the following:

In January 1996, Seaside contracted to sell its primary asset, a tract of land, for $1,200,000. Prior to the sale, the defendants purchased a total of 400 additional shares of stock in Seaside for $100 per share (par value) despite the fact that the shares were worth $800 per share. The defendants asserted the stock sale was necessary to raise capital in order to pay off $35,000 worth of debt. Several months after the last issuance, Seaside paid a 100–percent dividend on its shares of stock. Approximately thirteen months later, Seaside again paid a 100 per cent dividend on all outstanding shares.

The plaintiffs contend the defendants failed to give them adequate notice of the stock sale and this failure constituted a fraud upon them and the corporation. In addition, the plaintiffs allege the defendants' failure to provide full and fair disclosure prevented them from exercising their preemptive rights.[14] In support of their argument that the notice was insufficient, the plaintiffs presented Freeman's affidavit wherein Freeman states that, in his expert opinion, the notice was insufficient, and that the stock sale was a scheme designed to "enrich the insiders at the expense of the company and the other shareholders." Freeman further stated that in his opinion, the defendants' acts constituted a fraud upon the company and shareholders in violation of South Carolina Code section 35–1–1210.[15]

---

properly considered expert's affidavit in motion for summary judgment where the affidavit was in the form of an opinion based on expert's personal review of company files).

14. The defendants produced certified mail return receipts as evidence that notice was given. The record indicates, however, that the receipt addressed to Chisholm was unsigned.

15. S.C.Code Ann. § 35–1–1210 (Supp.2000) states:

It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to:

(1) employ any device, scheme, or artifice to defraud;

(2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the

The plaintiffs also allege the stock sale was done to enrich the defendants at the expense of the plaintiffs and the corporation. In support of this argument, the plaintiffs note that, in September 1996, Seaside paid a $100 dividend on its stock, allowing the defendants to reap a 100–percent profit on those shares purchased just months earlier. Freeman opined that the ability to pay a 100–percent dividend so closely following the issuance of the stock raised serious doubts as to Seaside's need to raise capital and thus cast doubt on the reason the stock was sold. Freeman further stated that the ability to pay such a dividend evidenced self-dealing and a breach of the defendants' fiduciary duties.[16]

Finally, we note that the plaintiffs also brought this action as a derivative suit. In examining the record on appeal, there is a question of fact regarding the fairness of the price of the stock and the payment of the dividends.

We hold the trial court erred in granting summary judgment to the defendants. In light of our ruling, we need not address the plaintiffs' remaining arguments.

**REVERSED AND REMANDED.**

CURETON and CONNOR, JJ., concur.

---

light of the circumstances under which they are made, not misleading; or

    (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

**16.** *Cf. Roper v. Dynamique Concepts,* 316 S.C. 131, 447 S.E.2d 218 (Ct.App.1994) (wherein the court of appeals held that stock issuance was proper where record indicated that the corporation was on the verge of bankruptcy).